IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VICTOR DONTAVIOUS STALLWORTH,

     Plaintiff,

v.                              CASE NO. 5:17-cv-306-MCR-GRJ

CAPT. WILLIAMS, et al.,

     Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION

This case is before the Court on remand from the Eleventh Circuit Court of Appeals.  The Eleventh Circuit vacated in part the Court's dismissal of *pro se* and in forma pauperis prisoner Plaintiff's civil rights case because the Court of Appeals concluded that Plaintiff stated a First Amendment retaliation claim against Defendant Captains Williams and Billingsley, and, possibly, a deliberate medical indifference claim against mental health counselor R. Cox for failing to provide adequate mental health care.  *See Stallworth v. Wilkins,* 802 F. App'x 435 (11th Cir. 2020) (per curiam). ECF No. 56.

Defendants now move for the second time for the Court to dismiss Plaintiff's complaint for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §

1997e(a). ECF No. 131. In the Motion, Defendants reargue their
exhaustion arguments set forth in their prior Motion to Dismiss, ECF No.
91, which this Court denied, ECF Nos. 100, 101. For the same reasons set
forth in the Court's adopted report and recommendation, *id*., the
undersigned respectfully **RECOMMENDS** that Defendants' Motion to
Dismiss Plaintiff's Fifth Amended Complaint, ECF No. 131, should be
**DENIED** without prejudice.

## I.    PLAINTIFF'S ALLEGATIONS

Stallworth allegations, taken as true, are that between the dates of
April 9, 2017 and June 5, 2017, while he was in administrative confinement
at Gulf Correctional Institute Annex ("Gulf CI"), Defendants violated his First
and Eighth Amendment rights as discussed below. ECF No. 116.

### A.    First Amendment "Retaliation" Claims.

Defendant Captains Williams and Billingsley retaliated against
Stallworth after he filed numerous grievances against them, their officers,
sergeants, staff and their boss. *Id.* The retaliation was in the form of
denying Stallworth a clean meal tray and by failing to notify food service
staff about the "black mold and mildew" on the trays so they could be
cleaned. *Id.* at 7. Stallworth complained to Captain Williams that the
"mildew and black mold" on the meal trays were making him sick, to which

2

Williams responded, "Stop filing grievances and maybe you will get clean trays and a diet change."  ECF No. 116 at 7.  Shortly thereafter, Stallworth complained to Captain Billingsley that the meal trays were making him sick, to which Billingsley responded, "Stop filing grievances on me and my staff and maybe your trays will be clean and not have mildew or black mold on them."  *Id*. at 7-8.  Stallworth then filed a formal grievance with the Assistant Warden about an informal grievance he filed on May 15, 2017, related to the filthy meal trays causing him to be ill.  *Id*. at 8.

Stallworth became very sick and suffered "a few stomach viruses," vomiting, fever, and constipation, all due to his having to eat off of contaminated meal trays."  *Id*.  His gastrointestinal illnesses lasted for months and resulted in two sick calls at a cost of five (5) dollars each.  *Id*. Medical nurses refused his third sick call on July 4, 2017.  *Id*.

In response to the instant motion, Stallworth appended copies of the grievances (informal, formal and appeal) that he filed regarding the meal trays' "black mold and mildew" causing him illness.  Two appeals to the Secretary are dated June 5, 2017 (#17-6-25294) and July 11, 2017 (#17-3-30493).  ECF No. 113 at 29, 31. One appeal to the Assistant Warden is dated July 17, 2017 (#17-7-150-028-07A).  *Id*. at 33.  All three appeals were denied.  *Id***.** at 30, 32, and 34.

3

The Secretary denied one of the appeals on the grounds that "[a] review of the grievance log database indicates that *an informal grievance*, log number 150-1705-0025, was received on 5/16/17 and a response was mailed to [Plaintiff] on 5/24/17; however, there is no record of [Plaintiff's] filing at the institutional *formal level* during the time frame specified in [his] appeal." ECF No. 131-1 at 47 (emphasis added).  The second identical appeal was denied for a different reason altogether: "that a review of the grievance log database indicates *no record* of [Plaintiff's] filing a grievance (i.e. informal/formal level), during the time-frame specified, regarding this issue."  *See* ECF No. 131-1 at 45 (emphasis added).  The Assistant Warden denied Plaintiff's July 17, 2017 appeal on the grounds that "review finds no sick call request submitted on that date."    ECF No. 131-1 at 28.

## B.    Eighth Amendment "Medical Deliberate Indifference" Claims.

Stallworth requested an initial mental health screening on April 19, 2017, and on May 5, 2017, he filed a formal grievance complaining that he had not been seen by a mental health counselor since he arrived at the Gulf CI on March 14, 2017, in violation of his one-year mental health plan. ECF No. 116 at 7. This allegation is corroborated by Stallworth's hand-written log filed with his June 5, 2017 grievance appeal to the Secretary (#17-6-25294), in which he states that he "filed a formal grievance on

4

5/5/17 at approx. 8:45 a.m. in P2-113 concerning a request I wrote Mental Health on 4/19/17 about her being in non-compliance with my Mental Health Plan. <u>No receipt or response</u>." *See* ECF No. 131-1 at 42 ¶8 (emphasis in original).  The Secretary denied this appeal for non-compliance with the Rules in that the grievance contained more than one issue.  ECF No. 131-1 at 43.

In an undated appeal to the Secretary,[1] Stallworth states that he "sent a request form to mental health", that he feared for his safety, and that he exhausted all his administrative remedies by filing informal and informal grievances, but that the grievance coordinator failed to provide him with any response or receipts.  ECF No. 131-1 at 31, 33.  The appeal was denied for failure to file a grievance at the institutional level.  *Id*. at 37.

On May 24, 2017, Stallworth filed an appeal with the Secretary (#17-6-23212) saying that he feared for his safety. ECF 131-1 at 38.  In that appeal, Stallworth claims that prison officials had searched his cell, stolen his informal and formal grievance logs, and threatened him if he filed any more grievances.  *Id*. Stallworth further stated that he had exhausted his administrative remedies by filing informal and formal grievances that were never responded to, "no receipts."  ECF 131-1 at 38.  This appeal was

---

[1] The stamp on the appeal indicates that it was received on May 19, 2017.

denied because it was not of an emergency nature, and because Plaintiff failed to "submit [his] grievance at the appropriate level at the institution." ECF No. 131-1 at 39.

Stallworth avers that he filed a second formal grievance on June 5, 2017, complaining that he still had not received mental health screening. ECF No. 116 at 8. Stallworth says that mental health counselor, R. Cox, denied him mental health treatment when he complained of "cold sweats, flash backs, hearing voices, and depression." *Id*. at 10.  Further, Stallworth says that the R. Cox failed to conduct an initial mental health screening, failed to schedule an appointment with him, and failed to visit him while he was in confinement. *Id*.  As a consequence of not being seen by a mental health counselor, on June 21, 2017, Stallworth attempted to commit suicide "just to get seen by Mrs. R. Cox, Mental Health Counselor." *Id*.

## II.   DISCUSSION

### A.   PLRA Exhaustion Requirement.

Under 28 U.S.C. § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004);

*see also Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement and concluding that the PLRA demands "proper exhaustion").  Nevertheless, prisoners are not required to "specifically plead or demonstrate exhaustion in their complaints." *See Jones v. Bock,* 549 U.S. 199, 216 (2007).  Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id*.; *Abram v. Leu*, 759 F. App'x 856, 860 (11th Cir. 2019) (PLRA exhaustion is an affirmative defense) (per curiam) (*citing Jones*, 549 U.S. at 216); *Greene v. Rice*, Case No. 3:18-cv-1497-J-32PDB, 2020 WL 919172, at *2 (M.D. Fla. Feb. 26, 2020) (PLRA exhaustion is an affirmative defense) (*citing Jones*, 549 U.S. at 216).

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits."  *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211.  While "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory… and unexhausted claims cannot be brought, *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (*citing Jones*, 549 at 211).  Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in the

7

applicable administrative rules and procedures of the institution.  *Woodford*, 548 U.S. at 93-94.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issue on the merits)."

*Id*. at 90 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Further, the PLRA's exhaustion requirement contains a "procedural default component":  prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply contained in the administrative grievance procedures.  *Johnson v. Meadows*, 418 F.3d 1152, 1158-59 (11th Cir. 2005) "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating."  *Id*. at 1158.  "[T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at

the time, the prisoner's administrative rules require.'"  *Id*. (quoting *Pozo,*
286 F.3d at 1025).

        *(i)*     *Availability of Administrative Remedies and Exhaustion*

     "There is an exception to the exhaustion requirement… that is 'baked
into' § 1997e(a)'s text: an inmate need exhaust only such administrative
remedies as are 'available.'"  *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th
Cir. 2021) (quoting *Ross v. Blake*, 578 U.S. 1174, 1862, 136 S.Ct. 1850,
195 L.Ed.2d 117 (2016)).  "Accordingly, an inmate is required to exhaust
those, but only those, grievance procedures that are 'capable of use' to
obtain 'some relief for the action complained of.'"  *Id.* (quoting *Ross*, 136
S.Ct. at 1859) (quoting *Booth v. Churner*, 532 U.S. at 738, 121 S.Ct. 1819).

     In its recent decision in *Ross v. Blake*, the Supreme Court identified
"three kinds of circumstances in which an administrative remedy [under the
PLRA], although officially on the books," is not "available" because it is "not
capable of use to obtain relief": (1) when "it operates as a simple dead
end—with officers unable or consistently unwilling to provide any relief to
aggrieved inmates"; (2) when it is "so opaque that it becomes, practically
speaking, incapable of use," such as when no ordinary prisoner can discern
or navigate it; or (3) when "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S.Ct. at 1859-62.

In addition to the above-mentioned exceptions to the PLRA exhaustion requirement, some courts have suggested that an inmate has exercised his administrative remedies when he has tried to properly file a grievance and the grievance was lost or destroyed by a prison official. *See, e.g., Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding that Plaintiff's allegations that (1) he submitted a grievance form to the corrections officer; (2) the grievance covered the events complained of; (3) the grievance was delivered to the appropriate grievance coordinator; (4) and prison officials totally failed to respond were sufficient to establish PLRA exhaustion); *Dole v. Chandler*, 438 F.3d 804, 813 (7th Cir. 2006) (prisoner exhausted his administrative remedies when he took all steps to exhaust one line of remedies and his attempts at review were foiled by prison officials) (citations omitted); *Baughman v. Harless*, 142 F. App'x 354, 359 (10th Cir. 2005) ("[A]dministrative remedies may be found unavailable . . . where the prisoner supports his allegations that he placed his grievances in the mail, but they were lost or destroyed and therefore his efforts to exhaust available remedies were impeded by correctional officers."); *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (rejecting

10

defendants' exhaustion defense where prison officials thwarted prisoner's efforts to exhaust his administrative remedies) (*citing* 42 U.S.C. § 1997e and quoting *Miller v. Norris* 247 F.3d 736, 740 (8th Cir. 2001) (holding that "a remedy that prison officials prevent a prisoner from 'utilizing' is not 'available' under § 1997e(a)")); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials made administrative remedies unavailable to the plaintiff when they failed to timely respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim.  In such circumstances, "filing suit was [Plaintiff's] only method to advance his claim."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); and *O'Connor v. Featherston*, Case No. 01-cv-3251(HB), 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) ("[A]n inmate may … defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where … an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts.") (citation and internal quotation marks omitted).

*(ii)    PLRA Exhaustion Under* Turner*'s Two-Step Analysis*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter of abatement under Federal Rule of Civil Procedure 12, and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008). Accordingly, a district court may properly "consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop a record." *Id.*; *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) (per curiam) (quoting *Bryant*, 530 F.3d at 1376).

Deciding a motion to dismiss for failure to exhaust administrative remedies as required by the PLRA requires a two-step analysis as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082 (citation omitted). At the first step of the *Turner* analysis, the Court must accept

12

Plaintiff's assertion as true and make the exhaustion determination on Plaintiff's view of the facts. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1211-12 (11th Cir. 2015). "If the complaint is not subject to dismissal through the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear error) (citation omitted). The court "make[s] *specific findings* to resolve the disputed factual issues related to exhaustion." *Whatley,* 802 F.3d at 1211-12 (emphasis in original).

   (iii)    *PLRA Exhaustion Is an Affirmative Defense*

   Because PLRA exhaustion is an affirmative defense, "the defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082 (citation omitted); *Brown*, 312 F.3d at 111 ("Failure to exhaust administrative remedies [under the PLRA] is an affirmative defense that must be pled and proven by the defendant.") (citation omitted); *see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). If Defendant fails to carry his burden to

prove that Plaintiff failed to exhaust his administrative remedies, dismissal is not warranted. *See McIlwain v. Burnside*, 830 F. App'x 606 (11ᵗʰ Cir. 2020) (reversing a district court's dismissal of prisoner's complaint for failure to exhaust because the district court "did not give [the plaintiff] an opportunity to develop the record on this issue before deciding it on the papers."); *Abram*, 759 F. App'x at 861 (vacating district court's dismissal on exhaustion grounds "[b]ecause the district court failed to provide [Plaintiff] a meaningful opportunity to respond and be heard on the exhaustion issue[.]"); *see also*, *Mann v. Perez*, Case No. 1:17-cv-241-AW-GRJ, 2019 WL 8160987, at *3 (N.D. Fla. Dec. 27, 2019) (recommending that motion to dismiss be denied because Defendants failed to meet their burden under the second step of the *Turner* analysis), report and recommendation adopted in part, 2020 WL 1062995 (not addressing exhaustion); *Diaz v. Martin*, Case No. 20-cv-23889-BLOOM, 2021 WL 2333296, at *8 (S.D. Fla. Jun. 8, 2021) (recommending that motion to dismiss be denied where defendant "ha[d] not carried his burden to show that Plaintiff failed to exhaust his administrative remedies" with respect to deliberate indifference claim); *Williams v. Hughes*, Case No. 5:19-cv-89-TKW/MJF, 2021 WL 606248, at *5 (N.D. Fla. Jan. 25, 2021) (recommending that motion to dismiss be denied without prejudice in order to allow limited discovery on

14

exhaustion, citing *McIlwain*, 830 F. App'x at 611).

**B.    Florida DOC's Inmate Grievance Process.**

In Florida, the procedural rules an inmate must follow to properly

exhaust administrative remedies are promulgated by the Florida

Department of Corrections ("FLDOC") and contained in the Florida

Administrative Code.  *See* Fla. Admin. Code Chapter 33-103 ("Inmate

Grievances").

*(i)    General Grievances*

To properly grieve an issue, an inmate must file a written informal

grievance using Form DC6-236 (Rule 33-103.005).  If the inmate is

dissatisfied with the result of the informal grievance, he must next file a

written formal grievance with the Warden's office using form DC1-303 (Rule

33-103.006).  Rule 33-103.006 provides that the inmate "shall submit a

grievance to designated staff by placing the grievance in the locked

grievance box." (Rule 33-103.006). "The designated staff person shall

deliver the box to the institutional grievance coordinator who will unlock the

box, remove the grievances, log the grievances, and provide the inmates

with receipts."  (Rule 33-103.006(8) (emphasis added).

An inmate may bypass the formal grievance step in the event of an

emergency.  (Rule 33-103.006).

*(ii)    Reprisals and Medical Grievances*

In situations where the inmate grieves reprisals or has a grievance of

a medical nature, he may directly file a formal grievance. (Rule 33-103.005

and Rule 33-103.008).  The rule governing grievances of a medical nature

provides that:

> (1) If a formal grievance of a medical nature is filed at the
> institutional level, it shall be forwarded to the institution's
> Chief Health Officer or clinical designee for investigation and
> response. Following preparation of a response and
> signature of the responding employee, the grievance shall
> be returned to the warden or assistant warden or deputy
> warden to ensure appropriate filing and routing.

(Rule 33-103.008(1)).

*(iii)    Appeals to the Secretary*

Finally, if the inmate feels that the grievance has not been

satisfactorily resolved at the formal stage, he must submit a written appeal

to the State Office of the Secretary ("Secretary") using form DC1-303 (Rule

33-103.007). This Rule further provides that: "Those grievances and

appeals that are placed in the grievance box, whether or not they are in a

sealed envelope, will be forwarded to the Bureau of Policy Management

and Inmate Appeals after being processed for mailing[.]"  (Rule 33-

103.007(6)(f)); *See, e.g., Parzyck v. Prison Health Servs., Inc*., 627 F.3d

1215, 1218 (11th Cir. 2010) (generally setting forth the FLDOC's grievance process).

    *(iv)   Timing Requirements*

    FLDOC's rules establish strict time frames for inmates to file grievances. Pursuant to Rule 33-103.011 ("Time Frames for Inmate Grievances"), informal grievances must be received "within 20 days of when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. (Rule 33-103.011(1)(a), and (b)).[2]

    Grievance appeals to the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Rule 33-103.011(1)(c). To eliminate issues with mailing, the rules make provisions for appeals to the Secretary to be receipted locally at the institution or facility. *See* Rule 33-103.006(8).

---

[2] Direct grievances to the Secretary must also be received within fifteen (15) days from the date on which the incident or action being grieved occurred. (Rule 33-103.011(1)(d)).

Grievance appeals and direct grievances to the Office of the

Secretary shall be responded to within 30 calendar days from the date of

the receipt of the grievance. (Rule 33-103.11(3)(c)).

## C.   The Parties' Evidence.

Defendants move to dismiss Stallworth's Fifth Amended Complaint

on the grounds that he failed to exhaust his administrative remedies on his

retaliation claims prior to filing his initial complaint.[3]  ECF No. 131. In

support of the motion, Defendants provide a declaration from a custodian of

records for grievances at the Florida Department of Corrections, Ramona

Coxe-Pye ("Coxe-Pye").  ECF No. 131-1 at 1.  Cox-Pye reviewed

Stallworth's file for grievances dated March 1, 2017 to December 20, 2017,

in particular, looking for retaliation allegations against the Defendants.  *Id.*

at 1. Although Coxe-Pye located a number of grievances related to this

lawsuit, she attests that "[t]here are no records of inmate Victor Stallworth

(DC #E21503) filing informal, formal, direct or appeal grievances related to

his retaliation claims" against any named Defendant in this case.  *Id.*

 Stallworth responds that he exhausted his administrative remedies

prior to filing his initial Complaint.  ECF No. 133 at 2.  Stallworth further

---

[3] Defendants do not make any argument whatsoever with respect to Stallworth's
medical deliberate indifference claims.

18

states that "several" of his informal, formal and appeal grievances,

complaining about retaliation against him by Captain Williams and Captain

Billingsley "were throw[n] away, shredded in a shredder, and not responded

to." *Id*. Stallworth maintains that he submitted the retaliation grievances

against Defendants to designated classification officers, that the

submissions should have been captured by the camera in front of his cell,

and that the classification officers placed the grievances in the required

locked "black locked box". *Id*. at 3. In support of his argument, Stallworth

supplied two (2) sworn affidavits of other inmates who witnessed Stallworth

turn his grievances over to classification officers. *Id*. at 14-16, 17-18. One

of those witnesses attests to having heard corrections officers tell

Stallworth that the reason his grievances were not being responded to is

because the grievance counselor was shredding them—"So, What. What

are you going to do about it? … It's more food for Ms. Wilkins [the

grievance coordinator] shredder." *Id*. at 15.

### D.    *Turner* **Two-Step Analysis**.

Under the first step set forth in *Turner*, the Court must look to the

plaintiff's allegations and the defendants' responses and, if there is a

conflict, accept the plaintiff's version as true. In this case, Stallworth avers

that he exhausted all of his available administrative remedies. ECF No. 133

at 2. Defendants say he did not with respect to his claims of retaliation.
ECF No. 131.  Stallworth further alleges that corrections officers worked to
thwart his access to the grievance process at the institutional level by
failing to respond to his grievances and by confiscating and destroying
them.  ECF No. 133 at 2. Although Defendants dispute this fact as well, the
affidavit supplied by the Defendants' records custodian does not address
this key assertion, whereas the sworn affidavits supplied by Stallworth meet
the issue head on.

Under *Turner*'s first step, given the dispute between the parties over
the exhaustion question, the Court must accept Stallworth's allegations that
he exhausted all his available administrative remedies as true.  Next, the
Court must make specific findings to resolve the conflict regarding the
exhaustion issue.  On the record before the Court, Stallworth alerted the
Secretary that he was being retaliated against on several occasions, and
he also complained many times that he was being denied access to mental
health services and the grievance process at his institution.  *See* ECF No.
131-1 at 31, 32-36, 38, 40-42, 44, 46, 48, 50.[4]  Consequently, Defendants'

---

[4] If Stallworth's confiscation and destruction allegations are true, Defendants cannot
deny him access to the grievance process and then ask the Court to dismiss his claims
on exhaustion grounds as the remedies would not have been "available" to him within
the meaning of the PLRA.

contention that Stallworth's confiscation and destruction allegations are not supported by the record are contradicted by the records themselves. Moreover, Defendants' record custodian's affidavit that the required grievances are not in Stallworth's grievance file does not establish that he failed to exhaust his available administrative remedies. At this stage of the litigation, the burden rests with Defendants to prove that Stallworth failed to exhaust his remedies as to the claims asserted in this lawsuit. Defendants have not met their burden. Therefore, the exhaustion question cannot be resolved as a matter of law by this Court without further discovery (as this Court has already ruled, *see* ECF Nos. 100, 101).

## IV. CONCLUSION

In sum, the undersigned concludes that Plaintiff's Fifth Amended Complaint should not be barred by the exhaustion requirement of the Prisoner Litigation and Reform Act ("PLRA"), 28 U.S.C. § 1997e(a) at this juncture. It is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. 131, Plaintiff's Fifth Amended Complaint should be **DENIED** without prejudice.

**IN CHAMBERS** in Gainesville, Florida this 29th day of July 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

21

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**[5]

---

[5] Upon review of the Florida DOC online inmate locator, it appears that Plaintiff is currently confined the Century C.I.  The Clerk is directed to forward a copy of this Report and Recommendation to this address and his address of record with the Court.

22