## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

VICTOR DONTAVIOUS STALLWORTH,

     Plaintiff,

v.                       CASE NO. 5:17-cv-306-MCR-MJF

CAPT. WILLIAMS, *et al.*,

     Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION[1]

In this civil action, Plaintiff alleges that two correctional officers—Captain Sean Williams and Captain William Billingsley—violated the First Amendment when they retaliated against Plaintiff for filing grievances. Doc. 116 at 9–10, 14. Defendants move for summary judgment because Plaintiff failed to exhaust his administrative remedies. Doc. 152. Plaintiff responded in opposition. Doc. 157. Because Plaintiff indeed failed to exhaust his administrative remedies, the District Court should grant Defendants' motion for summary judgment.

---

[1] On January 10, 2024, the undersigned recommended that the District Court dismiss Plaintiff's Eighth Amendment claim against Defendant Regina Cox. Doc. 174. That report and recommendation remains pending.

# I. BACKGROUND

## A. <u>Procedural Background</u>

On December 20, 2017, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983. Doc. 1. In his complaint, Plaintiff alleged that seven defendants violated Plaintiff's First-, Eighth-, and Fourteenth-Amendment rights. *Id.* at 1–3, 13–15.

After the District Court dismissed Plaintiff's complaint for failure to state a claim, the Eleventh Circuit affirmed in part and reversed in part the District Court's decision. *Stallworth v. Wilkins*, 802 F. App'x 435, 445 (11th Cir. 2020). The Eleventh Circuit concluded that Plaintiff had stated a First-Amendment retaliation claim against Defendants based on their alleged refusal to provide Plaintiff with clean meal trays. *Id.* at 440–41. This is the only remaining claim against Williams and Billingsley.[2] Doc. 116 at 9–10, 14; *Stallworth*, 802 F. App'x at 440–42.

Defendants have twice moved to dismiss this claim for Plaintiff's alleged failure to exhaust his administrative remedies. Doc. 91; Doc. 131. United States Magistrate Judge Gary R. Jones recommended denying

---

[2] Plaintiff interchangeably spells the surname "Billingsley" and "Billingsey." Doc. 116 at 1, 2. It appears that the correct spelling is "Billingsley." Doc. 152-1 at 58 ¶ 1.

both motions to dismiss because Defendants failed to meet their burden. Doc. 100; Doc. 136. The District Court adopted these recommendations. Doc. 101; Doc. 142. The District Court, however, noted that Defendants were free to develop this argument in a motion for summary judgment. Doc. 142 at 1–2.

Defendants renew their exhaustion argument—in addition to other arguments—in their motion for summary judgment. Doc. 152. Because the exhaustion defense is dispositive, this report and recommendation does not address Defendants' other arguments.

## B.   <u>Facts Derived from the Summary Judgment Record</u>

Between April 9 and May 15, 2017, Plaintiff filed several grievances against officers employed by the Florida Department of Corrections ("FDC"). Doc. 116 at 6–8 ¶¶ 10–13, 17, 21; Doc. 157-1 at 55. While Plaintiff was in Disciplinary Confinement, unspecified persons served Plaintiff meals on moldy trays. As a result, a virus infected Plaintiff and he suffered vomiting, fever, and constipation. Doc. 116 at 8 ¶ 22; *see* Doc. 157-1 at 35, 53.

On May 18, 2017, Plaintiff advised Williams that the mold and mildew on the food trays were causing Plaintiff to become ill. Doc. 116 at

7 ¶ 18. Williams purportedly refused to provide Plaintiff clean trays unless and until Plaintiff stopped filing grievances. *Id.* at 7 ¶ 18, 8 ¶ 20; *see* Doc. 157-1 at 55.

Similarly, on May 19, 2017, Plaintiff advised Billingsley that the meal trays were causing Plaintiff to become ill. Doc. 116 at 7–8 ¶ 19. Billingsley also purportedly refused to provide Plaintiff clean trays unless and until Plaintiff stopped filing grievances. *Id.*; *see* Doc. 157-1 at 56.

## II. STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The defense of failure to properly exhaust available administrative remedies under the PLRA is treated as a matter in abatement. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008); *Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir. 2008). Therefore, a motion for summary judgment based on the failure to exhaust administrative remedies is analyzed as a

motion to dismiss. *Bryant*, 530 F.3d at 1374–75. Exhaustion is analyzed in two steps. First, a district court must "determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th Cir. 2021) (quoting *Turner*, 541 F.3d at 1082). Second, if the complaint is not subject to dismissal at the first step, the district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). The district court then "decide[s] whether under those findings the plaintiff has exhausted his available administrative remedies." *Id.* (quoting *Turner*, 541 F.3d at 1083).

## III. DISCUSSION

### A.    The FDC's Grievance Procedure

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Varner*, 11 F.4th at 1260 (quoting *Woodford*, 548 U.S. at 90). The agency, not the PLRA, determines the proper method of exhaustion. *Jones*, 549 U.S. at 218.

The FDC's grievance procedure is a three-step process. To complete the process, an inmate must: (1) file an informal grievance with a designated prison staff-member; (2) file a formal grievance at the institutional level with the warden's office; and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code r. 33-103.005 to -103.007; *see Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

**B.    Plaintiff's Evidence and Analysis**

According to Plaintiff, he exhausted his administrative remedies prior to commencing this civil action. Doc. 116 at 5 ¶ 3; Doc. 94 at 1 ¶ 3; Doc. 133 at 2 ¶ 4; *see generally* Doc. 157-1 at 3 (incorporating Plaintiff's responses to Defendants' prior motions to dismiss). Plaintiff asserts that, regarding the dirty meal tray, he submitted an informal grievance on May 15, 2017, a formal grievance on May 31, 2017, and a grievance appeal on July 11, 2017. Doc. 116 at 7 ¶ 17, 8 ¶ 21.

Plaintiff also alleges that he filed "retaliation grievances" on May 18, May 19, June 27, and June 30, 2017. Doc. 94 at 3 ¶ 6; Doc. 133 at 4 ¶ 6. Plaintiff, however, does not identify (1) the specific content of those

"retaliation grievances"; (2) the type and level of these grievances (*i.e.*, informal, formal, or an appeal or direct grievance with the Central Office); (3) to whom he submitted the grievances; and (4) how he submitted the grievances. Doc. 94 at 3; Doc. 133 at 4.

Plaintiff asserts that—with the exception of the July 11 appeal— the FDC never responded to his grievances because Cynthia Wilkins ("Wilkins"), the grievance coordinator at Gulf Correctional Institution ("Gulf CI"), destroyed the grievances. Doc. 94 at 3; Doc. 133 at 2, 4. In support of his claims, Plaintiff relies on the allegations of his verified fifth amended complaint, his own handwritten grievance log, and the declarations of inmates Trae St. Agne and Robert Finley.

### 1. *Plaintiff's Handwritten Grievance Log and Verified Fifth Amended Complaint*

From April 9, 2017, through June 5, 2017, Plaintiff allegedly maintained his own handwritten grievance log, which purportedly details the grievances that Plaintiff submitted to the FDC. Doc. 157-1 at 16–17. Plaintiff's fifth verified complaint also provides a timeline of grievances that Plaintiff submitted. Doc. 116 at 6–8 ¶¶10–21. This evidence reflects that:

- On April 9, 2017, Plaintiff filed a formal grievance alleging that his Sony digital radio was confiscated. Doc. 116 at 6 ¶ 10; Doc. 157-1 at 16.

- On April 20, 2017, Plaintiff filed an informal grievance complaining that Officer Randy Jackson, Sergeant Smith, and Captain Williams threatened to use excessive force on Plaintiff. Doc. 116 at 6 ¶ 11; *see* Doc. 157-1 at 16.

- On April 20, 2017, Plaintiff filed an informal grievance against Sergeant Comartie for threatening Plaintiff.[3] Doc. 116 at 6 ¶ 11; Doc. 157-1 at 16.

- On April 20, 2017, Plaintiff filed a second grievance against Sergeant Smith because Smith threatened Plaintiff and spat on Plaintiff. Doc. 116 at 6 ¶ 11; Doc. 157-1 at 16.

- On April 27, 2017, Plaintiff filed an informal grievance about an exhaust fan that was not working properly. Doc. 116 at 6 ¶ 12; Doc. 157-1 at 17.

- On May 3, 2017, Plaintiff filed three formal grievances stating that he had not received responses to his grievances dated April 20, 2017. Doc. 116 at 6 ¶ 13; *see* Doc. 157-1 at 16–17.

- On May 15, 2017, Plaintiff filed an informal grievance about "black mold/mildew" on the confinement trays. Doc. 116 at 7 ¶ 17; Doc. 157-1 at 17.

- On May 15, 2017, Plaintiff filed an informal grievance because Defendants had retaliated against him by forcing him to sleep on a bare plastic mattress. Doc. 116 at 7 ¶ 17; Doc. 157-1 at 17.

- On May 15, 2017, Plaintiff filed a formal grievance about exhaust fans that were not working. Doc. 116 at 7 ¶ 17.

---

[3] Plaintiff inconsistently spells the surname of Sergeant Comartie. The undersigned simply will spell his surname "Comartie."

- On May 31, 2017, Plaintiff filed a formal grievance about the confinement trays not being cleaned properly. *Id.* at 8 ¶ 21.

- On July 7, 2017, Plaintiff filed a grievance because Defendants denied him cold drinking water. Doc. 16 at 13–14 ¶ 28 (verified third amended complaint); Doc. 11 at 13–14 ¶ 28 (verified second amended complaint); Doc. 6 at 11–12 ¶ 21 (verified first amended complaint); Doc. 1 at 11 ¶ 21 (verified complaint).

### 2. *The Declarations of Trae St. Agne and Robert Finley*

Plaintiff also provided declarations from two inmates that purportedly witnessed Plaintiff submit the grievances of retaliation and overheard classification officer Owens tell Plaintiff that his grievances were "food for Ms. Wilkins['s] shredder." Doc. 157-1 at 41, 45.

St. Agne and Finley state that they saw correctional officers collect grievances from Plaintiff on April 27, May 3, May 5, May 15, and May 31, 2017. Doc. 157-1 at 41, 44–45. These inmates, however, do not state that they saw Plaintiff submit grievances on May 18, May 19, June 27, and June 30, 2017. Furthermore, neither St. Agne nor Finley know the type and the level of the grievances Plaintiff purportedly submitted (*i.e.*, informal, formal, or appeal). They also do not state that they know the content of Plaintiff's numerous grievances. Additionally, they are inconsistent as to the number of grievances Plaintiff allegedly submitted.

St. Agne states that Plaintiff submitted a single grievance on each of the specified dates. *Id.* at 41. Finley, on the other hand, states that Plaintiff submitted "grievances" on the respective days, but he does not specify the number of grievances Plaintiff submitted on each date. *Id.* at 44–45.

## C. **Defendants' Evidence and Analysis**

Defendants contend that Plaintiff's retaliation claim must be dismissed because Plaintiff failed to submit grievances relating to the alleged misconduct in Plaintiff's fifth amended complaint. Doc. 152 at 16–20. In support of their argument, Defendants submitted two declarations from the Gulf C.I. grievance coordinator, Cynthia Wilkins; a declaration from the FDC custodian of records for grievances, Ramona Cox-Pye; a copy of the FDC's informal, formal, and appeal grievance logs; copies of Plaintiff's informal and formal grievances and appeals; and copies of the FDC's responses to Plaintiff's informal and formal grievances and grievance appeals.

### 1. *The Declarations of Cynthia Wilkins*

Wilkins attests that all "rules, policy, and procedure regarding the filing and responding to of Inmate Grievances w[ere] followed . . . ." Doc. 152 at 62–63 ¶ 5. "Every day a corrections officer comes around the wing

with a grievance box." *Id.* at 64 ¶ 4. When an inmate had a grievance, the inmate would hold the grievance through the cell's door flap and place the grievance in the box. *Id.* at 65 ¶ 6. The grievance box is locked and has only one slot for placing grievances in the box. *Id.* at 64 ¶ 4. Once all grievances were received, the corrections officer gave Wilkins the box. *See id.* at 65 ¶ 7. Only two people had the key to unlock the grievance box: Wilkins and the warden. *Id.* at 64 ¶ 5. Furthermore, correctional staff cannot open the box to remove grievances without violating FDC policy and being viewed on video. *Id.* at 65 ¶ 8.

Wilkins states that she did not hinder or impede "any Inmate[']s utilization of the grievance procedure at any level; informal, formal or appeal." *Id.* at 62 ¶ 3; *id.* at 64 ¶ 3. Wilkins asserts that she did not "destroy any Inmate grievances" and that "[a]ll grievances that were submitted were responded to and returned to the Inmate . . . ." *Id.* at 62 ¶¶ 3, 4; *id.* at 64 ¶ 3; *see generally id.* at 54 ¶ 3. Furthermore, Wilkins is not "aware of any other staff member destroying Inmate Grievances." *Id.* at 62 ¶ 4; *see generally id.* at 58–59 ¶¶ 6–7, 9; *id.* at 60–61 ¶¶ 6–7, 9.

### 2.    *The Declaration of Ramona Cox-Pye*

The FDC's custodian of records, Ramona Cox-Pye, reviewed the available grievance records for the period of March 1, 2017, through December 20, 2017, kept by the FDC Bureau of Classification Management for Plaintiff. Doc. 152-1 at 1 ¶ 3. Based on her review of the FDC's records of Plaintiff's filings, she states that "[t]here are no records of inmate Victor Stallworth (DC #E21503) filing informal, formal, direct or appeal grievances related to his retaliation claims" against any named Defendant in this case. *Id.*

### 3.    *Plaintiff's Informal Grievances*

According to the FDC's Informal Grievance Log, the FDC received four informal grievances from April 2017 through July 2017. Doc. 152-1 at 2–4. Specifically, the FDC received and responded to:

- **Informal Grievance, Log # 150-1704-0045.** On or about April 27, 2017, Plaintiff submitted an informal grievance, and Wilkins assigned the grievance a class code of "FACILITY CONDITIONS (INST. OPER)" because the grievance concerned Plaintiff's exhaust fans. Doc. 152-1 at 2; *see id.* at 45 (the Central Office explaining that this informal grievance dealt with Plaintiff's claim about exhaust fans); Fla. Admin. Code r. 33-103.013(6) (grievances with a class code of "Institutional Operations" covers any complaint about "heat and ventilation").

- **Informal Grievance, Log # 150-1705-0025.** On May 15, 2017, Plaintiff submitted an informal grievance alleging that he was

sleeping on a bare mattress because the laundry department had failed to return Plaintiff's sheets. Doc. 152-1 at 2, 10.

- **Informal Grievance, Log # 150-1706-0010.** On May 30, 2017, Plaintiff submitted an informal grievance alleging that Officer Randy Jackson, Sergeant Smith, Captain Williams, and Officer Comartie had threatened to use force on Plaintiff once Plaintiff was released from disciplinary confinement. Doc. 152-1 at 2, 12; Doc. 157-1 at 30.

- **Informal Grievance, Log # 150-1707-0053.** On July 6, 2017, Plaintiff submitted an informal grievance alleging that "there [was] no cold water working in [Plaintiff's] cell." Doc. 152-1 at 3, 13.

In none of these informal grievances did Plaintiff allege that Williams and Billingsley retaliated against Plaintiff by denying him a clean meal tray.

### 4. *Plaintiff's Formal Grievances*

According to the FDC's Formal Grievance Log, from April 2017 through July 2017, the FDC received from Plaintiff only five formal grievances. Doc. 152-1 at 14–15. Specifically, the FDC received and responded to:

- **Formal Grievance, Log # 1704-150-019.** On April 10, 2017, Plaintiff submitted a formal grievance in which he alleged that staff confiscated his digital radio. Doc. 152-1 at 21–25.

- **Formal Grievance, Log # 1704-150-037.** On April 23, 2017, Plaintiff filed a formal grievance in which he claimed that Officer Jackson wrote a false disciplinary report and failed to disclose two witnesses in the disciplinary report. Doc. 176-1 at 3.

- **Formal Grievance, Log # 1705-150-015**. On May 3, 2017, the FDC received a second, formal grievance containing allegations that Officer Jackson filed a false discplinary report against Plaintiff and failed to disclose two witnesses in the disciplinary report. *See* Doc. 152-1 at 14; Doc. 178-1 at 2.

- **Formal Grievance, Log # 1707-150-028**. On July 17, 2017, Plaintiff submitted a formal grievance in which he alleged that medical staff disregarded his sick call request for "stomach pains, throwing up and constipation from the black mold on the" meal trays. Doc. 152-1 at 27; Doc. 157-1 at 35.

- **Formal Grievance, Log # 1707-109-047**. On July 23, 2017, Plaintiff filed a formal grievance in which he asserted that the FDC should not have convicted him of a disciplinary infraction because Lieutenant Dupree's testimony was insufficient to establish Plaintiff violated prison rules. Doc. 176-1 at 5.

In none of these formal grievances did Plaintiff allege that Williams and Billingsley retaliated against Plaintiff by denying him a clean meal tray.

### 5. *Plaintiff's Direct and Appeal Grievances*

According to the FDC's Appeal Grievance Log, between April 2017 and July 2017, the Central Office received from Plaintiff only eight grievances. Doc. 152-1 at 29–30. Specifically, the FDC received and responded to:

- **Grievance Appeal Log # 17-6-20229.** On May 9, 2017, Plaintiff submitted a "grievance of reprisal" in which he alleged that Sergeant Comartie threatened to beat Plaintiff once he was released from prison. Doc. 157-1 at 19–20; *see* Doc. 152-1 at 31–36.

Plaintiff stated that he was afraid of Comartie and wanted "protection asap." Doc. 152-1 at 31.

- **Grievance Appeal Log # 17-6-22853.** On May 18, 2017, Plaintiff filed an "amended grievance of reprisal" against Comartie in which he alleged that Comartie threatened to beat Plaintiff once Plaintiff was released from confinement. Doc. 157-1 at 22–23.

- **Grievance Appeal Log # 17-6-22855**. On May 22, 2017, Plaintiff filed an appeal in which he stated that Officer Jackson filed a false discplinary report. Doc. 152-1 at 29; Doc. 176-1 at 7.

- **Grievance Appeal Log # 17-6-23214.** On May 24, 2017, Plaintiff filed an "emergency grievance of reprisal" in which he alleged that (1) unnamed officers had threatened to kill Plaintiff once he was released from confinement and that (2) Officers Hazelwood and Sims threatened to break Plaintiff's jaw and kill him if he wrote another grievance. Doc. 152-1 at 38; Doc. 157-1 at 28.

- **Grievance Appeal Log # 17-6-25294.** On June 5, 2017, Plaintiff submitted a grievance appeal in which he stated that Wilkins was retaliating against Plaintiff by throwing away Plaintiff's grievances. Doc. 152-1 at 40–42; Doc. 157-1 at 31.

- **Grievance Appeal Log # 17-6-30479.** On July 11, 2017, Plaintiff filed a grievance appeal in which he alleged that the exhaust fans in his cell were not working. Doc. 152-1 at 44.

- **Grievance Appeal Log # 17-6-30485.** On July 11, 2017, Plaintiff filed a grievance appeal in which he alleged that he consistently "notic[ed] Black Mold and Mildew on the food trays." Doc. 152-1 at 46. He claimed that the mold and mildew was a result of Food Services not using sanitizing agent while washing the trays and using improper drying techniques. *Id.*

- **Grievance Appeal Log # 17-6-30493**. On July 11, 2017, Plaintiff filed a grievance appeal in which he alleged that Food Service failed

to provide Plaintiff with an alternative diet. Doc. 152-1 at 48; Doc. 157-1 at 33.

In none these grievance appeals or direct grievances to the Central Office did Plaintiff allege that Williams and Billingsley retaliated against Plaintiff.

## D.    **The Undersigned's Findings Under *Turner***

### 1.    ***Plaintiff's Claim Survives Step One of Turner***

Plaintiff essentially makes two arguments in support of his contention that he exhausted his administrative remedies: (1) Plaintiff's grievance attempt that culminated in his grievance appeal of July 11, 2017, exhausted his claim; and (2) PLaintiff filed "retaliation grievance[s]" that sufficiently exhausted his claim but FDC personnel destroyed these grievances.

To sufficiently exhaust administrative remedies, an inmate's grievances—and any appeals of denied grievances—must provide the FDC with notice of the issue for which an inmate seeks a remedy. *See Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 953 (11th Cir. 2016); *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019). Although a prisoner-plaintiff is not required to present specific legal theories or identify specific constitutional provisions in his grievance, he

Page 16 of 37

must provide sufficient information to alert the prison officials to the issue so that prison officials may investigate the inmate's real complaint. *Johnson v. Johnson*, 385 F.3d 503, 518 (5th Cir. 2004); *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005). This is in line with the purpose of the exhaustion requirement: to provide prison officials "an opportunity to address the grievance internally and rule on the grievance before the inmate files a complaint in federal court." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005).

Pursuant to step one of *Turner*, the District Court must accept as true Plaintiff's allegation that he filed his various informal and formal grievances. Nevertheless, Plaintiff's attempt to exhaust his grievances on May 15, May 31, and July 11, 2017 were insufficient because they could not have provided the FDC notice of Plaintiff's claim of retaliation that he seeks to bring in this action.

### (a).  Plaintiff's Informal Grievance of May 15, 2017

Plaintiff contends that his informal grievance on May 15, 2017, provided the FDC with notice of his retaliation claim against Defendants. But according to Plaintiff, Defendants refused to provide Plaintiff with clean meal trays on *May 18 and May 19, 2017*, respectively. Doc. 116 at

7–8 ¶¶ 17–20. Thus, in the informal grievance Plaintiff allegedly filed on May 15, Plaintiff necessarily could not have complained about events that occurred **three or four days later**. Because Plaintiff necessarily could not have complained about events that had not yet occurred, Plaintiff's grievance of May 15 could not have provided the FDC with notice of Plaintiff's retaliation claims regarding Defendants.

### (b).   Plaintiff's Formal Grievance of May 31, 2017

According to Plaintiff, his formal grievance of May 31, 2017, complained "about the confinement trays not being cleaned properly and also about the confinement trays having mildew and black mold on them . . . causing the Plaintiff to [be] sick with stomach viruses." Doc. 116 at 8 ¶ 21; *accord* Doc. 152-1 at 46. Plaintiff does not assert that he included any information that Defendants refused to provide him clean trays *in retaliation for or because* he was filing grievances. Furthermore, it would have been improper for Plaintiff to include new information in his formal grievance that was not considered by prison officials at the informal level. *See* Fla. Admin. Code r. 33-103.014(1)(o) ("Since this is an appellate review process and not a fact-finding process, it is not appropriate to raise new allegations, charges, and facts that the previous

decision maker has not had an opportunity to investigate and respond to."). Thus, this grievance also could not have provided notice to the FDC that Defendants retaliated against Plaintiff.

### (c).  Plaintiff's Grievance Appeal of July 11, 2017

In his grievance appeal of July 11, 2017, Plaintiff stated that "Food Services" failed to clean and dry the meal trays. Doc. 152-1 at 46. In this appeal, Plaintiff did not allege that Defendants were retaliating against Plaintiff or that they refused to provide Plaintiff a clean tray *because Plaintiff had filed grievances*.[4] This grievance appeal, therefore, did not exhaust Plaintiff's administrative remedies regarding his claim against Defendants. *Johnson*, 385 F.3d at 518; *Arias v. Perez*, 758 F. App'x 878, 881–82 (11th Cir. 2019); *Goldsmith*, 357 F. Supp. 2d at 1340–41.[5]

### (d).  Plaintiff's "Retaliation Grievances"

Plaintiff also states that he attempted to comply with the FDC's grievance procedure on May 18, May 19, June 27, and June 30, 2017, by

---

[4] Plaintiff knew how to allege retaliation insofar as he properly alleged (unrelated) retaliation by other FDC employees. *See* Doc. 152-1 at 38, 40; Doc. 157-1 at 23, 28, 31.

[5] For this same reason, Plaintiff's medical grievance—Formal Grievance, Log # 1707-150-028—is insufficient to exhaust his administrative remedies.

filing "retaliation grievance[s]." Doc. 94 at 3 ¶ 6; Doc. 133 at 4 ¶ 6. Plaintiff contends that he was thwarted from using the administrative process because Wilkins improperly disposed of these grievances. Doc. 94 2–3 ¶¶ 4, 6; Doc. 133 at 2 ¶ 5; *see generally* Doc. 157-1 at 3. Defendants argue that Wilkins did not thwart Plaintiff's ability to utilize the grievance procedure and that Plaintiff simply failed to exhaust his administrative remedies. Doc. 152 at 25.

Pursuant to *Turner*'s first step, because the parties dispute the availability of the administrative procedure, the District Court must accept Plaintiff's allegations that he filed "retaliation grievances" on May 18, May 19, June 27, and June 30, 2017, and that Wilkins intercepted these grievances. Because of this, the District Court must proceed to *Turner*'s step two regarding the "retaliation grievances" Plaintiff purportedly filed on May 18, May 19, June 27, and June 30, 2017.

## 2. *Plaintiff's Claims Do Not Survive Step Two*

At *Turner*'s second step, a district court must make specific findings to resolve conflicts in the evidence, while keeping in mind that defendants bear the burden to establish that a plaintiff failed to exhaust his administrative remedies. *Whatley v. Warden ("Whatley I")*, 802 F.3d

1205, 1211–12 (11th Cir. 2015). A district court must weigh the evidence and make credibility determinations "to resolve disputes of fact" about whether "defendants have shown a failure to exhaust." *Id.* (citation omitted); *see also Whatley v. Smith* ("*Whatley II*"), 898 F.3d 1072, 1083 (11th Cir. 2018).

"Baked into" the PLRA's exhaustion requirement is an exception: "[a]n inmate need exhaust only such administrative remedies as are available." *Varner*, 11 F.4th at 1258 (quoting *Ross*, 578 U.S. at 648) (internal quotation marks omitted). In other words, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (citing *Ross*, 578 U.S. at 642). Administrative remedies are "available" when they offer "the possibility of some relief for the action complained of." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is unavailable, for example, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. The plaintiff bears the burden to show that the grievance

procedure was unavailable to him. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020).

For the reasons set forth below, the undersigned finds that Plaintiff's allegation that the grievance procedure was unavailable to him is less credible than Defendants' evidence that Plaintiff simply did not file "retaliation grievances" on May 18, May 19, June 27, and June 30, 2017.

**(a).    The FDC Grievance Logs and Copies of Plaintiff's Grievances Contradict Plaintiff's Contention that Wilkins Destroyed Plaintiff's Grievances**

The law does not require federal courts to accept allegations that are internally inconsistent, allegations that run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions. *See Campos v. INS*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998). Plaintiff supports his claim of unavailability by claiming that Wilkins had a history of destroying his grievances and that she specifically destroyed grievances Plaintiff submitted prior to May 18, 2017. Doc. 94 at 3; Doc. 133 at 4; Doc. 157-1 at 16–17; Doc. 157-1 at 41–45. This allegation is contradicted by the FDC's grievance logs

and the copies of Plaintiff's own grievances. The undersigned addresses five such instances below.

### Plaintiff's Grievance Regarding Confiscation of His Radio.

On April 9, 2017,[6] Plaintiff submitted a formal grievance regarding FDC staff confiscating his digital radio. Doc. 116 at 6 ¶ 10; Doc. 152-1 at 21–25. On April 10, 2017, the warden's office received this formal grievance, Log #1704-150-019. Doc. 152-1 at 14, 21. On April 27, 2017, three days *after* Owens purportedly told Plaintiff that Wilkins had destroyed Plaintiff's grievances, the warden's office denied Plaintiff's grievance Log # 1704-150-019 and returned the grievance to Plaintiff. *Id.* at 14, 26.

Obviously, the warden's office could not address a grievance that it had never received because Wilkins destroyed it. Thus, Plaintiff's contention that Wilkins destroyed this grievance appears to be false.

### Plaintiff's Grievances Against Officer Randy Jackson.

Plaintiff alleged that on April 20, 2017, he filed an *informal* grievance against Officer Randy Jackson. Doc. 116 at 6 ¶ 11; Doc. 157-1 at 16. On May 3, 2017, after the FDC purportedly failed to respond, Plaintiff filed

---

[6] On April 10, 2017, Plaintiff signed and dated this grievance.

a formal grievance about Jackson. Doc. 116 at 6 ¶ 13; Doc. 157-1 at 16, 41, 44.

In actuality, on April 23, 2017, Plaintiff filed a *formal* grievance against Jackson. Doc. 152-1 at 14; Doc. 176-1 at 3. On April 24, 2017, the warden's office received this formal grievance, and on May 11, 2017, the warden's office denied Plaintiff's formal grievance. Doc. 152-1 at 14; Doc. 176-1 at 2.

On or about May 3, 2017, Plaintiff filed a second formal grievance against Jackson raising the same claims as his formal grievance of April 23, 2017. Doc. 178-1 at 2; *see* Doc. 152-1 at 14. The warden's Office received the grievance on May 3, 2017, and on May 11, 2017, returned the grievance to Plaintiff because the allegations had already been addressed. Doc. 178-1 at 2; *see* Doc. 152-1 at 14.

Again, the fact that the FDC received and responded to these grievances refutes Plaintiff's contention that Wilkins was intercepting all of his grievances.

**<u>Plaintiff's Grievance Regarding Exhaust Fans.</u>** Similarly, on April 27, 2017, Plaintiff filed an informal grievance claiming that the exhaust fan in his cell was not working properly. Doc. 116 at 6 ¶ 12; *see*

Doc. 157-1 at 41, 44. On April 27, 2017, the FDC received informal grievance, Log # 150-1704-0045. Doc. 152-1 at 2. Wilkins assigned this grievance a "Class Code" of "Facility Conditions (INST OPER)," which covers grievances about heat and ventilation. *Id.*; *see* Fla. Admin. Code r. 33-103.013(6). On April 27, 2017, FDC staff denied the grievance and returned the grievance to Plaintiff. Doc. 152-1 at 2; *see id.* at 45 (Central Office confirming that the FDC received and responded to Plaintiff's informal grievance about the exhaust fans).

Yet again, if Plaintiff's contention that Wilkins intercepted all of his grievances were true, the FDC could not have received and responded to this grievance.

**Plaintiff's Grievances of Reprisal Against Comartie**. Plaintiff alleged that on May 3, 2017, he filed two "grievances of reprisal" against Comartie. Doc. 157-1 at 17; *see* Doc. 116 at 6 ¶ 13. On May 19, 2017, the Central Office received Plaintiff's first "grievance of reprisal" against Comartie.[7] Doc. 152-1 at 29, 31–36; Doc. 157-1 at 19–20. On May 23, 2017, the Central Office responded to the "grievance of reprisal." Doc. 152-1 at 29, 36.

---

[7] This grievance of reprisal was dated May 9, 2017.

Additionally, on May 31, 2017, the Central Office received Plaintiff's "amended grievance of reprisal" against Comartie. Doc. 152-1 at 29; Doc. 157-1 at 22. On June 9, 2017, the Central Office responded and returned to Plaintiff the "amended grievance of reprisal." Doc. 152-1 at 29; Doc. 157-1 at 24.

Yet again, if Plaintiff's contention that Wilkins intercepted all of his grievances were true, the FDC could not have received and responded to these grievances.

**<u>Plaintiff's Grievance Regarding His Bare Mattress.</u>** Plaintiff alleged that on May 15, 2017, he filed an informal grievance in which he alleged that the FDC forced him to sleep on a bare plastic mattress. Doc. 116 at 7 ¶¶ 15–17. On May 16, 2017, the FDC received Plaintiff's informal grievance. Doc. 152-1 at 2, 10–11. On May 24, 2017, FDC staff denied this informal grievance and returned it to Plaintiff. *Id.* at 2, 10–11. Again, FDC staff obviously could not have responded to a grievance that Wilkins had destroyed.

\* \* \*

Because Plaintiff's claim that Wilkins destroyed Plaintiff's grievances prior to May 18, 2017, is contradicted by the FDC's grievance

logs and the copies of Plaintiff's own grievances, Plaintiff's credibility is significantly undermined. This casts substantial doubt on Plaintiff's allegation that he submitted "retaliation grievances" of May 18, May 19, June 27, and June 30, 2017, and Wilkins destroyed these grievances.

### (b). The FDC's Grievance Logs Reflect Plaintiff Was Able to File Grievances Without Interference

In assessing whether prison administrators destroyed an inmate's grievances, a district court may consider the inmate's history of filing grievances as recorded in prison grievance logs. *See Whatley II*, 898 F.3d at 1083. Evidence that an inmate successfully filed other grievances may refute an inmate's "contention that his attempts to exhaust administrative remedies were thwarted by prison staff." *Stewart v. Coates*, No. 3:21-cv-00719/MCR/ZCB, 2023 WL 5352930, at *6 (N.D. Fla. July 3, 2023) *report and recommendation adopted*, No. 3:21-CV-719-MCR/ZCB, 2023 WL 5352611 (N.D. Fla. Aug. 21, 2023); *Lawson v. McGee*, No. 19-81526, 2021 WL 2515683, at *5–6 (S.D. Fla. June 18, 2021); *Redding v. Mamoran*, No. 4:14-CV-49-RH/GRJ, 2014 WL 4693100, at *5 (N.D. Fla. Sept. 20, 2014).

According to the declaration of Cox-Pye, the FDC grievance logs, and the copies of Plaintiff's grievances and appeals, Plaintiff filed—and

the FDC received—twelve grievances during the period in which Wilkins purportedly was intercepting Plaintiff's grievances. Doc. 152-1 at 2–3, 10, 12–14, 21–26, 29, 30, 31–36, 38–42, 45; Doc. 157-1 at 19–20, 22–24, 30; Doc. 176-1 at 2–3, 6–8. The fact that Plaintiff successfully filed these grievances substantially undermines Plaintiff's contention that Wilkins was intercepting Plaintiff's grievances.

Indeed, Plaintiff successfully filed *at least six grievances* on or near the date he claims that he filed his "retaliation grievances" that allegedly exhausted his claim against Defendants. If Wilkins were intercepting Plaintiff's "retaliation grievances"—as Plaintiff contends—why did she not also intercept Plaintiff's six other grievances? Plaintiff offers no answer to this rather obvious question.

Because Plaintiff successfully filed multiple grievances between May and July 2017, the undersigned finds incredible Plaintiff's contention that Wilkins intercepted Plaintiff's "retaliation grievances" that he filed on May 18, May 19, June 27, and June 30, 2017.

### (c).  Inconsistencies in Plaintiff's Allegations

Plaintiff's credibility is further undermined by inconsistencies in Plaintiff's allegations. *See Bure v. Miami-Dade Corr. Dep't*, No. 11-CV-

21459, 2012 WL 12876019, at *8 (S.D. Fla. Feb. 10, 2012) (noting that the inconsistencies in the plaintiff's account undermined his credibility), *report and recommendation adopted sub nom. Bure v. Miami Dade Corr.*, No. 11-21459-CV, 2012 WL 12876026 (S.D. Fla. May 21, 2012), *aff'd sub nom. Bure v. Miami-Dade Corr. Dep't*, 507 F. App'x 904 (11th Cir. 2013). Courts do not have to accept as true allegations that are internally inconsistent. *See Campos*, 32 F. Supp. 2d at 1343.

**Plaintiff's Alleged Grievances of April 20, 2017.** In his verified fifth amended complaint, handwritten grievance log, and responses to Defendants' motions to dismiss, Plaintiff consistently alleged that on April 20, 2017, he filed:

- an informal grievance against Comartie;

- an informal grievance against Jackson, Smith, and Williams; and

- a second informal grievance against Smith.

Doc. 116 at 6 ¶ 11; Doc. 157-1 at 16; *see* Doc.94 at 1 ¶ 3; Doc. 133 at 2 ¶ 4.

In his response to the motion for summary judgment, however, Plaintiff asserts that on April 20, 2017, he filed "two informal grievances"

against Williams, which Wilkins destroyed. Doc. 157-1 at 3. Plaintiff offers no explanation for this apparent inconsistency.

**Plaintiff's Grievances of May 3, 2017.** Similarly, in his verified fifth amended complaint and his responses to Defendants' prior motions to dismiss, Plaintiff consistently stated that on May 3, 2017, he filed three formal grievances because he had not received a response to any of the informal grievances that he filed on April 20, 2017. Doc. 116 at 6 ¶ 13 (verified fifth amended complaint); *see* Doc. 94 at 1 ¶ 3 (response to first motion to dismiss); Doc. 133 at 2 ¶ 4 (response to second motion to dismiss).

This is inconsistent with Plaintiff's handwritten grievance log. Plaintiff's log states that on May 3, 2017, Plaintiff filed:

- two formal grievances regarding the lack of response to his formal grievances; and

- a "grievance of reprisal" against Comartie. Doc. 157-1 at 16–17.[8]

---

[8] Defendants produced a copy of Plaintiff's grievances of reprisal against Comartie and the Central Office's response to those grievances. Doc. 152-1 at 29, 31–36; Doc. 157-1 at 19–20. This suggests that Plaintiff's handwritten grievance log is more accurate than Plaintiff's account in his complaint—at least as to Plaintiff's grievances regarding Comartie. Nevertheless, the FDC's production of these grievances and responses refutes Plaintiff's contention that Wilkins destroyed all of Plaintiff's

There are additional contradictions. For example, Plaintiff never asserted in any of his verified complaint, handwritten grievance log, or any previous response to Defendants' argument that on May 3, 2017, he filed a retaliation grievance against Defendant Billingsley. But in his response to Defendant's motion for summary judgment, Plaintiff changed his account for a third time. Plaintiff now claims that on May 3, 2017, he filed a "grievance of reprisal" against Billingsley, and Wilkins destroyed this grievance. Doc. 157-1 at 3.

Plaintiff offers no explanation for these inconsistencies. Plaintiff's repeated alteration of his allegations regarding his efforts to exhaust administrative remedies—and Wilkins' purported interception of his grievances—substantially undermines Plaintiff's credibility.

**Plaintiff's Altered Allegations Regarding Denial of Cold Water vs. Clean Meal Trays.** In each of his verified complaints, Plaintiff consistently alleged:

---

grievances. Furthermore, Plaintiff fails to explain why Wilkins would intercept only the grievances that purportedly would show that Plaintiff exhausted his administrative remedies against Defendants, and not other grievances.

- on June 26 and June 30, 2017, Defendants denied Plaintiff cold drinking water; and

- on July 7, 2017, he filed an informal grievance asserting that Defendants denied him cold drinking water.

Doc. 116 at 8–9 ¶¶ 26–28 (verified fifth amended complaint); Doc. 68 ¶¶ 26–28 (verified fourth amended complaint); Doc. 16 ¶¶ 26–28 (verified third amended complaint); Doc. 11 ¶¶ 26–28 (verified second amended complaint); Doc. 6 ¶ 21 (verified first amended complaint); Doc. 1 ¶ 21 (verified complaint). Consistent with those allegations, the FDC produced a copy of an informal grievance, dated July 6, 2017, in which Plaintiff complained that his cell lacked cold drinking water. Doc. 152-1 at 13.

In his response to Defendants' first motion to dismiss,[9] Plaintiff improperly attempted to amend his retaliation claim against Defendants. In that response—for the first time ever—Plaintiff alleged that *on June 26 and June 30, 2017*, Defendants retaliated against Plaintiff by denying him *clean meal trays*, not cold drinking water. Doc. 94 at 8; Doc. 133 at

---

[9] In his response to the Defendants' motion for summary judgment, Plaintiff incorporated his response to the Defendants' first motion to dismiss.

5. Not only is this allegation not found in any of the six complaints Plaintiff filed in this case, but it is also contrary to Plaintiff's contention in his fifth amended complaint that Defendant's retaliated against him by denying him clean meal trays on *May 18 and May 19, 2017*, respectively. Doc. 116 at 7–8 ¶¶ 17–20.

This suggests that Plaintiff is fabricating a story to avoid summary judgment. This, too, substantially undermines Plaintiff's credibility regarding his allegation that Wilkins intercepted grievances in which Plaintiff exhausted his administrative remedies. *See Butler v. Lingold*, No. 3:19-CV-890-BJD-JBT, 2021 WL 808862, at *3 (M.D. Fla. Mar. 3, 2021) (noting that the plaintiff's credibility was undermined by the fact that his allegations appeared less than forthright).

### (d).  Plaintiff's Contention that He Filed "Grievances of Retaliation" Lacks Sufficient Detail and Is Uncorroborated

**Plaintiff's Allegations Lack Detail.** Plaintiff's handwritten grievance log and his verified fifth amended complaint do not contain allegations that he submitted grievances on May 18, May 19, June 27, and June 30, 2017. Doc. 116; Doc. 157-1 at 16–17. Rather, Plaintiff first

made these allegations in his response to the Defendants' first motion to dismiss.

Furthermore, in his response to Defendants' first motion to dismiss, Plaintiff refers to his grievances of May 18, May 19, June 27, and June 30, 2017 only as "retaliation grievances." Doc. 94 at 3 ¶ 6; Doc. 133 at 4 ¶ 6. Plaintiff does not describe the contents of these "retaliation grievances," he does not identify the type or level of these grievances, and he does not provide any information regarding how he submitted the grievances. Doc. 94 at 3 ¶ 6; Doc. 133 at 4 ¶ 6. He also failed to provide a copy of these grievances to the clerk of the court. In other words, Plaintiff provided nothing to corroborate that these grievances—if they ever existed—contained sufficient information to exhaust Plaintiff's administrative remedies.

Plaintiff's lack of detail and his failure to summarize the contents of the grievances further undermines his credibility. *See Buckman v. Winningham*, No. 3:22-CV-903-MMH-PDB, 2023 WL 4931513, at *7 (M.D. Fla. Aug. 2, 2023) (finding the plaintiff's assertion that grievances were unavailing because he "neither summarize[d] the contents of the formal grievances that he allegedly submitted on those dates, nor does

he say how he submitted them . . . ."); *Butler*, 2021 WL 808862, at *3 (same).

Plaintiff's lack of detail is even more peculiar because Plaintiff's handwritten grievance log and verified fifth amended complaint contain rather detailed descriptions of *other grievances* that Plaintiff certainly submitted around the time he purportedly filed his "retaliation grievances" regarding Defendants. *See* Doc. 116 at 6–8 ¶¶ 9–13, 17, 21; Doc. 157-1 at 16–17. Plaintiff offers no explanation for this peculiarity and inconsistency.

**The Lack of Corroborating Evidence.** Furthermore, besides Plaintiff's conclusory and vague allegations, there is no evidence in the record to corroborate Plaintiff's allegation that he filed the "retaliation grievances." Indeed, Plaintiff's handwritten grievance log—which was dated June 5, 2017—does not refer to the May 18, May 19, or May 31, 2017, grievances. Doc. 157-1 at 17.

Furthermore, even Plaintiff's fellow inmates—St. Agne and Finley—do not claim that they saw Plaintiff submit grievances on May 18, May 19, June 27, or June 30, 2017. Doc. 157-1 at 41–42, 44–45. Regardless, St. Agne and Finley apparently never read Plaintiff's

grievances, and thus could not offer helpful information regarding the contents of Plaintiff's grievances.

## IV. CONCLUSION

In light of the analysis set forth above, the undersigned finds incredible Plaintiff's contention that he attempted to exhaust his administrative remedies by filing grievances regarding Defendants on May 18, May 19, June 27, and June 30, 2017, and that Wilkins intercepted these grievances. Defendants, therefore, have carried their burden of showing that Plaintiff failed to exhaust his administrative remedies prior to commencing this civil action. Accordingly, the undersigned recommends that the District Court:

1.    **GRANT** Defendants Williams and Billingsley's motion for summary judgment, Doc. 152.

2.    **DIRECT** the clerk to enter judgment in favor of Defendants and close the case file.

At Pensacola, Florida, this <u>28th</u> day of February, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**